In re **SPENARD VENTURES, INC., Debtor.**

**Bankruptcy No. 3–81–00311.**

United States Bankruptcy Court, D. Alaska.

March 1, 1982.

Robert A. Breeze, Rose & Breeze, Anchorage, Alaska, for debtor, Spenard Ventures, Inc.

Richard D. Thaler, Hughes, Thorsness, Gantz, Powell & Brundin, Anchorage, Alaska, for Ted W. and Paula M. Jackson.

## MEMORANDUM OPINION

J. DOUGLAS WILLIAMS, II, Bankruptcy Judge.

This matter is before the Court on the motion of secured creditors Ted W. Jackson and Paula M. Jackson (Jacksons) for dismissal of the Chapter 11 petition of Debtor Spenard Ventures, Inc. (Spenard). Jacksons claim that Spenard was created and the subject property transferred to it for the sole purpose of filing a Chapter 11 petition and obtaining a stay of foreclosure on the property, and thus the petition was filed in bad faith and should be dismissed pursuant to §§ 1112(b) and 305(a)(1) of the Bankruptcy Reform Act of 1978 (Code), 11 U.S.C. § 101 *et seq.* The matter having been heard by the Court, and having considered the testimony and the arguments of the parties, this Court finds that Spenard was not formed, and that the Chapter 11 petition was not filed, solely for the purpose of delaying or hindering foreclosure, and that the petition was not filed in bad faith. Jacksons' motion to dismiss is therefore denied.

## FINDINGS OF FACT

The property that is the subject of this dispute consists of Lot 13 of the Lintner Subdivision in Anchorage, Alaska, together with the improvements thereon, a commercial building. On December 31, 1980, Lawrence M. Weatherman (Weatherman) purchased the property from the Jacksons, giving to Jacksons a $10,000 down payment plus a note for $85,000, payable in full on May 1, 1981. The note was secured by a deed of trust on the property, the Jacksons being the beneficiaries. The deed of trust was executed on December 31, 1980 and recorded on January 5, 1981. The transaction between Weatherman and the Jacksons was arranged by George Huff (Huff), a business associate of Weatherman.

The subject property is rented as commercial space to two tenants, Sign Masters and Studio North. The former pays approximately $1600 per month rental, the latter about $250 per month. Sign Masters is a partnership of Huff (approximately 90% ownership interest) and Weatherman (10% interest).

Weatherman and Huff made improvements to the building both before and after the May 1, 1981 due date of the deed of trust note. Huff testified that improvements totaling approximately $20,000 have been made. However, the note fell into default. As of May 1981, and as of the

time of this suit, only three $1000 interest payments had been made on the indebtedness, in addition to the $10,000 down payment. The balance due on the note is $85,000 plus interest from May 9, 1981.

The Jacksons commenced non-judicial foreclosure proceedings on July 31, 1981. A foreclosure sale was set for November 16, 1981, but was subsequently postponed until December 16, 1981.

Spenard Ventures, Inc. was incorporated pursuant to Alaska law on November 23, 1981. The corporation is owned by Huff and Weatherman. Stock has been issued to Huff, and according to the testimony, will be issued to Weatherman. Huff is Spenard's president and only officer. Huff, the only witness, testified that the corporation was created to evidence the interests of the parties in the business endeavors.

On December 11, 1981, Weatherman transferred all of his interest in the subject property to Spenard. In return, Weatherman received a note for $32,500. No, or very little, down payment was made to Weatherman, no title insurance was obtained, and there was no standard form proration of taxes, insurance or rents. Huff testified that a closing was held at the office of the corporate attorney. Huff further testified that his business affairs and those of Weatherman are intermingled.

The subject property is the only asset of Spenard. The property was appraised at $117,500 in August of 1981. Spenard's schedule of assets lists the property's present market value at $130,000. This Court finds that it is worth at least $117,500.

On December 15, 1981, Spenard filed a Chapter 11 petition. The Jacksons filed their motion to dismiss the petition on December 31, 1981. A hearing on the motion was held before this Court on February 2, 1981.

CONCLUSIONS OF LAW

■ Section 1112(b) of the Code authorizes the Court to dismiss a Chapter 11 petition or to convert the case to one under Chapter 7 for "cause", on the petition of a party in interest. Although that section sets out a list of circumstances constituting cause, that list is not exclusive. *See* § 102(3). The legislative history of § 1112(b) demonstrates the intent of Congress that the bankruptcy court retain broad equitable powers to dismiss petitions. Senate Report 95–989, 95th Cong. 2d Sess. 117 (1978); House Report 95–595, 95th Cong. 1st Sess. 405–406 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787. Most courts that have faced the issue have held that bad faith in the filing of a petition constitutes cause for dismissal under § 1112(b). *See, e.g., In re Victory Construction Co., Inc.,* 9 B.R. 549, 558, 7 B.C.D. 257, 3 C.B.C.2d 655 (Bkrtcy.C.D.Calif.1981); *In re Tolco Properties, Inc.,* 6 B.R. 482, 486, 6 B.C.D. 913, 3 C.B.C.2d 100, Bkr.L.Rptr. ¶ 67,699 (Bkrtcy.E.D.Va.1980); *In re G–2 Realty Trust,* 6 B.R. 549, 552, 6 B.C.D. 1072, 2 C.B.C.2d 1344 (Bkrtcy.D.Mass.1980); *Cf. Shapiro v. Wilgus,* 287 U.S. 348, 53 S.Ct. 142, 77 L.Ed. 355 (1932) (interpreting the Uniform Fraudulent Conveyance Act and English common law). This Court agrees and holds that bad faith in filing a Chapter 11 petition may provide cause to dismiss a petition pursuant to § 1112(b). In addition, the United States District Court for the District of Alaska has held that the burden of proving good faith is on the debtor. *In re Teneb, Inc.,* No. A–80–129 Civil, slip op. at p. 3 (D.Alaska March 11, 1981).

The Jacksons allege two aspects in which the transactions leading to the filing of the petition show bad faith. First, the Jacksons claim that Spenard is merely a corporate shell, formed not for any legitimate business purpose, but only for the purpose of filing the Chapter 11 petition. Second, the Jacksons claim that the petition itself was not filed for any legitimate purpose, but only for the purpose of obtaining a stay of the foreclosure sale and hindering the Jacksons from reaching their collateral.

■ A review of the cases involving the formation of new entities shortly before the filing of Chapter 11 petitions indicates that the Court must balance several factors in determining whether a petition was filed in bad faith. The underlying inquiry is whether the debtor seeks to abuse the bank-

ruptcy law by employing it for a purpose for which it was not intended to be used, *e.g.*, to cause hardship or delay to creditors. A weighing of all factors in the present case causes this Court to conclude that Spenard was formed for a valid business purpose and that the Chapter 11 petition was not filed in bad faith.

The evidence shows that Spenard was organized for a legitimate business reason and not solely to file a Chapter 11 petition or to hinder the Jacksons. Huff testified that the corporation was formed on the advice of his attorney and of his accountant to evidence the interests of Huff and Weatherman in the business venture. In view of the intermingling of the affairs of Weatherman and Huff and of the informality with which those affairs had previously been conducted, the attempt to structure the affairs through the formation of a corporation was legitimate, even prudent. The uncertain state of Weatherman's health (he had recently suffered a heart attack) also provided a reason to transfer the property into corporate ownership. The corporation was also capable of managing the affairs of the venture: the renting of the property. Huff further testified that he and Weatherman had been planning to form a corporation for some time, and Huff explicitly denied that the corporation was formed for the purpose of filing a Chapter 11 petition. Other than the proximity to the filing of the Chapter 11 petition of the incorporation of Spenard and of the transfer to it of the property, there is no evidence to indicate that Spenard was created for the purpose of filing a Chapter 11 petition. In the circumstances, such evidence does not outweigh the testimony of Huff as to the legitimate business purposes of the corporation.

The inference that the corporation was not formed solely to file the Chapter 11 petition is strengthened by the fact that

formation of a corporation was unnecessary to the filing of a petition and did not, of itself, hinder the recourse of the Jacksons to their collateral. Weatherman could have accomplished the same result by filing a Chapter 11 petition as an individual. There is no evidence in the record to indicate that Weatherman individually holds assets which are now shielded from the Jacksons by the corporation. The scant testimony presented as to Weatherman's property tends to show that he has no significant assets, other than his interest in the subject property and a minor interest in Sign Masters. Moreover, Weatherman remains personally liable on his note to the Jacksons. The fact that the formation of Spenard and the transfer of the property to it does not materially hinder the Jacksons nor shelter assets from them tends to show that the incorporation and the transfer were neither made for an illegitimate purpose nor in bad faith. *Cf. Matter of Northwest Recreational Activities, Inc.*, 4 B.R. 36, 42, 6 B.C.D. 164, (Bkrtcy.N. D.Ga.1980); *In re Tolco Properties, Inc.*, *supra*, 6 B.R. at 486–487.

■ The court also finds that the Chapter 11 petition was filed for a purpose recognized as valid by the Code, the rehabilitation of an ongoing business, and not solely to delay or hinder the Jacksons. Spenard is in the business of managing rental property and making commercial investments. Inability to meet its financial obligations threatens it with the loss of substantially all of its capital. The Chapter 11 petition was filed in an attempt to arrange the debts of the business, through re-financing or new capital investment.[1] Even liquidation through sale of the assets might be a legitimate purpose of a Chapter 11 proceeding.[2] Where the debtor is motivated by a legitimate reorganization purpose and not solely or predominantly by the desire to prevent

---

1. Although Huff testified as to a proposed sale of the property, since the proposed purchaser is Huff's wife who is alleged to have sufficient borrowing capacity to refinance the Jackson obligation, the proposal in actuality is closer to the reorganization of an ongoing business than to a liquidation under Chapter 11.

2. Chapter 11 of the Code, entitled "Reorganization", specifically provides in § 1123(b)(4) that a plan may "provide for the sale of all . . . of the property of the estate. . . ."

foreclosure or hinder creditors, bad faith is not present. *Cf. In re Victory Construction Co., Inc., supra,* 9 B.R. at 565; *In re Alison Corp.,* 9 B.R. 827, 830, 7 B.C.D. 500, 4 C.B. C.2d 199 (Bkrtcy.S.D.Cal.1981); *In re G–2 Realty Trust, supra,* 6 B.R. at 554.

The inference of a lack of bad faith in filing the petition is strengthened by the fact that no attempt to shelter assets or financial resources from the Jacksons has been shown. As noted above, the evidence tends to show that no substantial assets beyond those owned by Spenard exist. In any event, as previously stated, Weatherman remains liable on his note to the Jacksons. Moreover, had the Jacksons been able to proceed with the nonjudicial foreclosure sale under the deed of trust, Alaska law would have barred them from recovering any deficiency judgment, thus making irrelevant the existence of other assets.[3] Absence of intent to shield assets from creditors tends to show good faith. *Matter of Northwest Recreational Activities, Inc., supra,* 4 B.R. at 42.

It is true that in the present case there exist no unsecured creditors who will be aided by the Chapter 11 reorganization. Weatherman, as an owner of the corporation, must be discounted as an unsecured creditor in this regard. Thus, one chief purpose of a Chapter 11 reorganization, protection of unsecured creditors, is lacking here. *Cf. In re Dutch Flat Investment Co.,* 6 B.R. 470, 472, 6 B.C.D. 1214, 3 C.B.C. 2d 136 (Bkrtcy.N.D.Cal.1980); *In re Alison Corp., supra,* 9 B.R. at 829. But where, as here, the debtors may feasibly develop a plan to satisfy their secured creditors, the absence of unsecured creditors does not outweigh the factors already discussed and does not of itself require a finding that the petition was filed in bad faith.

In summary, this Court finds that Spenard Ventures, Inc. was formed for a legitimate business reason and not solely to hinder the Jacksons nor to file the Chapter 11 petition. The Court further finds that the Chapter 11 petition was filed for a valid purpose under the reorganization chapter of· the Code and that the debtor has a reasonable chance of confirming and consummating a plan under Chapter 11. The petition was not filed in bad faith nor solely to hinder the Jacksons or prevent foreclosure. No cause exists to dismiss the petition pursuant to § 1112(b), and dismissal pursuant to § 305(a)(1) would not be in the best interests of the debtor.

The motion to dismiss the petition is the only matter now properly before the Court for determination. Although the Jacksons styled their motion as one for adequate protection in the alternative, adequate protection was not requested in the prayer for relief. No evidence concerning adequate protection was presented at the hearing, nor did the proposed findings of fact and conclusions of law submitted by the Jacksons mention the matter. The attorney for the Jacksons acknowledged at argument that the thrust of his motion was for dismissal based on the debtor's bad faith in filing the Chapter 11 petition. Thus, the Court is not able to determine the question of adequate protection based on the evidence before it. The motion to dismiss is denied, without prejudice to the Jacksons to seek relief from the automatic stay of § 362 or adequate protection.

---

**3.** The relevant portion of the Alaska Statutes reads:
*Sec. 34.20.100. Deficiency judgment prohibited.* When a sale is made by a trustee under a deed of trust, as authorized by §§ 70–130 of this chapter, no other or further action or proceeding may be taken nor judgment entered against the maker, his surety or guarantor, on the obligation secured by the deed of trust for a deficiency.