**In re Richard Eric SERFASS, Debtor.**

**No. 8:04–BK–01677–ALP.**

United States Bankruptcy Court, M.D. Florida, Tampa Division.

April 14, 2005.

Guillermo A. Ruiz, St. Petersburg, FL, for Debtor.

***ORDER ON MOTION FOR SANCTIONS OF PAMELA A.M. CAMPBELL, AS SUCCESSOR PERSONAL REPRESENTATIVE OF THE ESTATE OF MABEL D. SERFASS, DECEASED, AND NANCY S. RUIZ AND ROBERT E. SERFASS, AS SUCCESSOR CO–TRUSTEES OF THE MABEL D. SERFASS REVOCABLE TRUST UNDER AGREEMENT DATED JULY 23, 1991*** (Doc. No. 145)

ALEXANDER L. PASKAY, Bankruptcy Judge.

Parties involved in legal disputes fueled by a family feud frequently are driven not by detached objectivity, but by emotions. For this reason, the real facts are somewhat blurred and presented in a fashion which shed at times insufficient light on the real focus of the controversy because

the parties are embroiled in litigating issues which are merely peripheral and rarely relevant to the precise and narrow issue presented for the courts consideration. The foregoing comments are made only for a purpose of highlighting the problem in the present instance which is a request for imposition of sanctions for the alleged "bad faith" filing of this Chapter 11 case by Richard Eric Serfass (the Debtor).

The discrete matter under consideration is a Motion for Sanctions filed by Pamela A.M. Campbell, as Successor Personal Representative of the Estate of Mabel D. Serfass, Deceased, and Nancy S. Ruiz and Robert E. Serfass, as Successor Co–Trustees of the Mabel D. Serfass Revocable Trust Under Agreement Dated July 23, 1991 (the Movants). The Motion is based on allegations that (1) the Debtor commenced this Chapter 11 case in bad faith in order to frustrate, hinder and delay the Movants' state court case against the Debtor to foreclose the mortgage on the Debtor's residence and to recover hundreds of thousands of dollars in transfers which the Debtor obtained allegedly by exercising undue influence on his now deceased mother; (2) that the conduct of the Debtor after the commencement of the case demonstrates that he filed this case in bad faith; and (3) the Debtor filed his own Motion to Dismiss his case by admitting that this was merely a two-party dispute and that he was unable to effectuate a Plan of Reorganization. Based on the foregoing, the Movants contend that this Court should impose sanctions on the Debtor requiring him to pay to the Movants' attorney's fees and cost.

The facts as appear from the record of this case including some matters which occurred prior to the commencement of this Chapter 11 case, can be summarized as follows.

On January 28, 2004, the Debtor filed his Petition for relief under Chapter 11. While the Debtor's initial filing of his Petition for Chapter 11 was deficient in several respects these deficiencies were ultimately cured by the Debtor.

On February 5, 2004, Zala L. Forizs, Esquire, filed a Notice of Appearance and Request for Placement on the Local Rule 1007–2 Parties in Interest List, on behalf of the Movants.

On March 22, 2004, The Movants filed their Objection to the Debtor's claim of exemptions. On April 22, 2004, the Movants filed a Motion and sought an Order authorization the 2004 Examination of the Debtor and production of documents and personal property for inspection. On the same day, the Movants also commenced an adversary proceeding, Adv. No. 04–230 and filed a Complaint to Determine Non–Dischargeability of Debt.

On May 4, 2004, the Movants filed a Motion and sought relief from the automatic stay. Initially the Motion was not properly served, but the deficiency of service was cured on May 10, 2004, by counsel for the Movants.

On May 16, 2004, this Court entered its Order scheduling Final Evidentiary Hearing on the Movants' Objection to the Claim of Exemptions of the Debtor. On May 24, 2004, this Court also entered its Order Scheduling Final Evidentiary Hearing on (1) Motion for Relief from Stay Filed by Amsouth Bank; (2) Motion for Relief from Stay Filed by Robert E. Serfass; and (3) Motion for Relief from Stay Filed by the Movants.

On June 3, 2004, the Debtor and the Movants filed their Consent Motion to Continue Final Evidentiary Hearing on Objection to Debtor's Claim of Exemptions and a Motion for Continuance and a Motion to Reschedule the Hearings on the

Objections to Exemptions and on the Motion for Relief from Stay. On June 4, 2004, this Court entered an Order Granting the Consent Motion to Continue and the hearing was rescheduled for August 3, 2004.

On June 7, 2004, this Court entered an Order on the Movants' Motion for 2004 Examinations, Production of Documents and Personal Property and for Inspection of Property. In its Order, this Court granted the Movants' Motion and authorized the Movants "... to take 2004 Examination and obtain the production of documents and inspection of real and personal property as requested in paragraph 7 of the Motion."

Beginning June 14, 2004, counsel for the Movants issued and served twelve subpoenas on various parties ostensibly in connection with the 2004 Examination and relevant to the Movants' Objection to the Claim of Exemptions. The service of subpoenas, of course, spawned some Motions for Protective Order, one filed on June 24, 2004, by Movant Anna Marie Serfass and another on June 30, 2004, by Movant, Betty Truluck.

On June 28, 2004, the Debtor filed a Motion as Debtor in Possession to Dismiss his Chapter 11 Case. Notwithstanding the pendency of this Motion, counsel for the Movants, vigorously pursued the litigation with the Debtor and filed several affidavits concerning the service of the subpoenas.

On July 23, 2004, counsel for the Movants filed a Motion for Preliminary Hearing or, Alternatively, to Continue Final Evidentiary Hearing on Debtor's Motion to Dismiss the Chapter 11 Bankruptcy Case. On the same day, the Movants also filed a Motion to Compel Debtor to Comply with Order Authorizing Rule 2004 Examination. The Movants also filed a Motion to Convert this case to a Chapter 7 case. Notwithstanding the pendency of the Motion by the Debtor to dismiss his Chapter 11 case and the Motion by the Movants to convert this Chapter 11 case to a Chapter 7 liquidation case, counsel for the Movants continued vigorously to pursue discovery, served additional subpoenas and litigated the Motions for Protective Order which spawned from the service of the subpoenas.

On August 2, 2004, Betty Truluck and Anna Marie Serfass filed their second Motions for Protective Order concerning additional subpoenas issued by Zala Forizs, Esquire, on behalf of the Movants on July 22, 2004.

On August 11, 2004, the Movants filed a Motion to Continue Final Evidentiary Hearings on Objections to the Claim of Exemptions and Motion for Relief from Stay as to Foreclosure Action. On August 17, 2004, this Court heard oral arguments on the Debtor's Motion to Dismiss the above-captioned Chapter 11 Proceeding. On August 23, 2004, this Court entered its Order Dismissing this Chapter 11 Case, without prejudice. (Doc. No. 141).

On September 2, 2004, the Movants filed a Motion for Rehearing on Order Dismissing the Case. They also filed the Motion for Sanctions, alleging for first time that the Petition was filed in bad faith, which is the instant matter under consideration.

Thus, even though this above-captioned Chapter 11 case was dismissed, the Movants' last Motion generated a new lawsuit which acquired its own life. The Movants' last Motion has further spawned twenty-nine new docket entrees in connection with the Movants' attempt to restart discovery, apparently relevant to the Motion for Sanctions.

These are the essential facts which appear from the record which present a succinct recap of the history of the litigation between the parties in this Court. In order to complete the picture, however, it

is necessary to make reference to the events which occurred prior to the commencement of the Chapter 11 case.

Prior to the commencement of this case, the Debtor was named as defendant in two state court actions brought by the Movants against the Debtor. One case was styled as Amended Petition to Determine Shares of Beneficiaries and to Remove Co-Trustee. In this Petition, the Movants alleged that the Debtor was indebted to the estate of the decedent (i.e., the Debtor's Mother), based on the transfers he made to himself and the transfers that the Debtor allegedly caused the decedent to make through her life by using undue influence. The Movants sought a set off from the Debtor's shares of the decedent's estate and also sought the removal of the Debtor as Co-trustee of the trust established by the deceased. Based on the allegations stated above, the Movants contend that the Debtor is indebted to the estate in excess of $674,000. The Movants also sought to recover from the Debtor the sum $665,000, which the Movants allege that the Debtor caused the decedent to transfer to him from the trust through the exercise of undue influence.

The second state court action was an action brought by the Personal Representatives to foreclose on a mortgage on the residence of the Debtor and his wife. The mortgage was granted by the Debtor to his mother originally to secure indebtedness in the principal amount of $493,000 which, according to the Movants, the Debtor himself satisfied without directly paying the balance owed on the mortgage while the decedent was incapacitated and prior to her death acting as her attorney in fact under a Durable Power of Attorney. Both litigations came to a stand still when the Debtor filed his Petition for Relief under Chapter 11 in January 2004 and no at-

tempts were made to remove the state court action to this Court.

In order to determine the threshold question, that is, the dismissal of a Chapter 11, "for cause," pursuant to Section 1112(b) of the Bankruptcy Code, the court must consider the basis for the dismissal alleged, which is the alleged "bad faith" of a debtor.

## CONCEPT OF GOOD FAITH AS AN OVERRIDING PRINCIPLE OF BANKRUPTCY ADMINISTRATION

■ The good faith of a debtor seeking relief in bankruptcy, or its converse the bad faith of a debtor, has been recognized to be an overriding principle of bankruptcy administration. Under the Bankruptcy Act of 1898 the concept of "good faith" of a debtor seeking relief under Chapter X was a part of the eligibility to file relief under that chapter. With the adoption of the Code, Congress did not impose such a requirement to show good faith before the debtor could maintain a Chapter 11 case. Notwithstanding, in Section 1112(b), Congress authorized a dismissal or conversion of a Chapter 11 case for "cause," which included the lack of good faith of a debtor who sought relief under the chapter. As used in this Section, the term "cause" includes lack of good faith, or its converse the bad faith of the debtor, for grounds of dismissal. *In re Newark Airport/Hotel Ltd. P'ship*, 156 B.R. 444 (Bankr.D.N.J. 1993), aff'd, 155 B.R. 93 (D.N.J.1993).

■ The hallmarks of bad faith in filing a Petition are: (1) pre-petition litigations already pending in the state court between the parties; (2) it is basically a two party dispute; (3) the debtor is either solvent or it has very few unsecured debts which the debtor is able to meet; (4) the Petition is filed for an improper purpose; (5) there is no need for reorganization and

the filing was for the sole purpose to use the judicial resources of the bankruptcy court, most likely under the assumption that the debtor will receive a more favorable treatment in the bankruptcy court then it had received so far in the state court, and (6) there is no ability or sincere desire to reorganize the financial affairs of the debtor. "The real test which still remains is the presence of the honest intention of the debtor, the actual need, and the ability to effectuate the aim of the reorganization." *In re Julius Roehrs,* 115 F.2d 723 (3d Cir.1940). The fact that the debtor is not engaged in business is not a per se bar to seek relief under Chapter 11 and does not indicate bad faith, it is a fact that must be considered when the issue is raised. *Toibb v. Radloff,* 501 U.S. 157, 111 S.Ct. 2197, 115 L.Ed.2d 145 (1991).

■ Generally, the courts do not condone the use of Chapter 11 to resolve two-party disputes in the bankruptcy court when such litigation is still pending in a non-bankruptcy forum prior to the commencement of the case. *In re Port Richey Serv. Co.,* 44 B.R. 634 (Bankr.M.D.Fla. 1984); *In re Mildevco, Inc.,* 40 B.R. 191 (Bankr.S.D.Fla.1984); *In re Am. Prop. Corp.,* 44 B.R. 180 (Bankr.M.D.Fla.1984); *In re Landmark Capital Co.,* 27 B.R. 273 (Bankr.D.Ariz.1983).

The foregoing principles announced by the courts have been applied when there was a challenge to the debtor's right to maintain a Chapter 11 case. In the present instance this is not an issue in the conventional sense since the Debtor himself sought a dismissal on June 28, 2004. The Movants do not seek dismissal. On the contrary, they want to retain this two-party dispute in the bankruptcy court but seek to convert this Chapter 11 case to a Chapter 7 liquidation case. Thus, the rules governing dismissal under Section 1112(b) of the Bankruptcy Code are not relevant except that the Section also provides for a conversion.

On August 23, 2004, this Court entered an Order that granted the Debtor's Motion and dismissed this Chapter 11 case. (Doc. No. 141). The Motion to Impose Sanctions, although not articulated by the Movants, is based on the inherent power of the court which is necessary to protect and preserve the integrity of the process. *Chambers v. NASCO, Inc.,* 501 U.S. 32, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991).

■ In the present instance, there is no doubt that the Debtor's Petition was filed in bad faith and without a legitimate purpose. The Debtor's only dispute with the Movants involved the Debtor's activity as the Personal Representative of his deceased mother's estate, which has been litigated in state court.

At the time of filing the Debtor was unemployed, was not engaged in any business except in the business of litigating. The Debtor never had a need or a sincere desire, or an ability to utilize the rehabilitative use of this Chapter. In sum, it is clear that the filing was an abuse of the system and would warrant the imposition of sanctions on the Debtor. The difficulty stems from the fact of the unique procedural history of this defunked Chapter 11 case.

It should be emphasized at the outset what is and what is not before this Court. This is not the Motion by a party of interest to dismiss a Chapter 11 case on the basis it was filed in bad faith. Neither is the discrete matter before this Court a Motion to request conversion from a Chapter 11 case to a Chapter 7 case.

What is before this Court is simply a Motion to Impose Sanctions on the Debtor whose case has been dismissed based on the allegations that his Petition for Relief under Chapter 11 was filed in bad faith.

The parties of interest, in this instance the Movants, have been in litigation with this Debtor in state court for several years. When one keeps this in mind, it should be apparent immediately that the basis for the imposition of sanctions is not Section 362(h) (violation of the automatic stay), nor is it F.R.B.P. (non-compliance of discovery), nor is it F.R.B.P. 9011 (the Certification Rule). Rather, the imposition of sanctions is based upon the inherent power of the Court.

It should be noted that the Movants, rather than immediately challenge the Debtor's right to obtain relief in the Bankruptcy Court on the basis that the Petition was filed in bad faith, immediately embarked on extensive litigation on the Debtor's right to the claimed exemptions and the Debtor's examination pursuant to Rule 2004. The Movants also filed a Motion and sought relief from the automatic stay and after several continuances, finally on July 23, 2004, filed not a Motion to Dismiss, but a Motion to Convert the Chapter 11 to a Chapter 7 case after the Debtor filed his own Motion to Voluntarily Dismiss the Chapter 11. This Motion did not stop the Movants from continuing to conduct their litigation concerning the Debtor's claim of exemptions and also their Motion for Relief from the Stay in order to continue litigating in the state court. The Motion for Sanctions was not filed until September 2, 2004.

In light of these undisputed facts which appear from the record, this Court is satisfied that after the Debtor filed a voluntary Motion to Dismiss, any further legal services relating to the Debtor's right to claim exemptions and continuing litigation concerning their Motion for Relief from Stay was unnecessary and should not be compensated.

■ Considering the foregoing, this Court is satisfied that the Movants are entitled only for the economic damage they suffered as a direct result of the bad faith filing which was never really raised by the Movants. Realizing that their claim is somewhat tenuous, they contend they were forced to pursue litigation because of alleged promises of the Debtor to settle with the Movants. Be that as it may, the Movants are entitled to a reasonable attorney's fee which was necessary and justified to assert their rights, at least until the Debtor filed his Motion to Dismiss this Chapter 11 case.

Based on the foregoing, this Court is satisfied that the proper fee to be allowed is $31,288.25 and reasonable costs incurred are $2,513.89, for a total of $33,802.14.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Motion for Sanctions filed by Pamela A.M. Campbell, as Successor Personal Representative of the Estate of Mabel D. Serfass, Deceased, and Nancy S. Ruiz and Robert E. Serfass, as Successor Co–Trustees of the Mabel D. Serfass Revocable Trust Under Agreement Dated July 23, 1991, be and the same is hereby, granted in part and denied in part. Sanctions are hereby awarded against the Debtor and in favor of the Movants in the amount of $31,288.25 for fees and $2,513.89 for costs, for a total of $33,802.14. The balance of the amount sought be, and the same is hereby, disallowed. It is further

ORDERED, ADJUDGED AND DECREED that the $33,802.14 amount awarded shall be paid within 30 days of the date of entry of this Order.